The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID DAVIDOW and SHERYL DE MERS, domestic partners,<br><br>Plaintiffs,<br><br>v.<br><br>ZALNATRAV, INC., a Washington corporation; RAVENARK, a Washington sole proprietorship; TRAVIS B. BRANDT and JANE DOE BRANDT, husband and wife, and the marital community composed thereof,<br><br>Defendants. | Civil Action No. 2:22-cv-01594-RAJ<br><br>**ORDER** |

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' David Davidow and Sheryl De Mers ("Plaintiffs") motion for a temporary restraining order ("TRO") against Defendants Zalnatrav, Inc., Ravenark, Travis B. Brandt, and Jane Doe Brandt ("Defendants") (Dkt. #

ORDER - 1

6) and Plaintiffs' motion for an order of default against Zalnatrav, Inc. Dkt. #16. Having considered the parties' written arguments, the record, and applicable law, the Court **GRANTS** Plaintiffs' motion for a temporary restraining order and **DENIES** Plaintiffs' motion for a default order.

## II.   BACKGROUND

Plaintiffs are individuals and domestic partners living in Reno, Nevada. Dkt. # 1 (Compl.), ¶ 1. Defendant Travis Brandt is the president and sole owner of Zalnatrav, Inc. ("Zaltranav"), a Washington-based business that makes boats. Dkt. # 14 (Declaration of Travis Brandt), ¶5, 6; Compl., ¶ 2. Defendant states that Ravenark is intended to be a "brand" or "mark" of Zaltranav, Inc. Dkt. # 14, ¶ 15. Plaintiffs allege that Ravenark is a sole proprietorship owned and operated by Brandt in Washington. Compl., ¶ 3. Brandt advertises Ravenark as an aluminum boat builder on a website, Facebook, and YouTube. *Id.* at ¶ 11. Brandt indicates he first met Davidow in approximately March 2015. Dkt. # 14, ¶ 16. In December 2021, Plaintiffs began communicating with Brandt regarding the design, manufacture, and sale of a monohull aluminum boat, the Ravenark Bootlegger 22. Compl., ¶ 15. During this time, Brandt told Davidow that he wanted to build a boat manufacturing business and hoped to eventually produce one boat per day. Dkt. # 14, ¶ 21. Plaintiffs state that on December 11, 2021, Davidow and Brandt signed a contract for a Bootlegger 22 boat (the "Vessel") with a purchase price of $124,719.00. Dkt. # 8, ¶13, 14. This December 11 contract provided that Plaintiffs (the "Buyer") pay for the Vessel in three installments. *Id.* On December 13, 2021, Davidow wired a payment of $25,000.00 from the Reno City Employees Federal Credit Union to Zalnatrav's JP Morgan Chase bank account. *Id.*, ¶ 14-16, Ex. A. After this initial wire transfer, the parties discussed upgrades to the Vessel, including larger engines. *Id.*, ¶ 17. On December 15, 2021, Davidow and Brandt executed a new contract with a purchase price of $171,010.00. *Id.* Plaintiffs allege that at this point, Brandt informed them that the

ORDER - 2

Vessel would have to be re-engineered to accommodate the larger engines. *Id.*, ¶ 18-19. Davidow and Zanatrav then signed a December 21, 2021 "Agreement of Purchase and Sale for Manufacture of New Vessel." Dkt. # 8, Ex. B ("Contract"). The Contract provided that Zalatrav (the "Manufacturer") would manufacture and sell:

- "A 2022 Ravenark Bootlegger 24.5-foot monohull aluminum boat
- Powered by TWIN Suzuki 140hp Outboards.
- Complete with customer options as specified in Appendix A, attached, and incorporated.
- Including a dual axle trailer with bunks." *Id.*

The Contract provided that the purchase price, $202,951.00, would be paid in three installments: the first payment of $25,000.00 due at signing, a second payment of $119,750.00 due approximately 10-20 days after the first payment, and a third and final payment of $58,201.00 due approximately 30-40 days after the second payment.[1] *Id..* If the Buyer did not make payments in full by the due date, the Manufacturer could attempt to negotiate "acceptable terms to remedy the Buyers' late payment default." *Id.*, Ex. B at pp. 2. However, if the parties could not reach "reasonable terms" within 20 days to "remedy the new agreement," then the Manufacturer could cancel the Agreement and (1) "Keep and retain for Manufacturer's own benefit all payments of Buyer," (2) "Keep and re-sell the vessel to recoup its loss and defaulted Buyer shall have no claim on those funds." *Id.*, Ex. B at pp. 2-3. However, these two options would be a "last resort" if negotiations were unsuccessful after 20 days. *Id.*

The Contract contained several other relevant provisions. For example, it states that "Manufacturer shall begin manufacturing the Vessel when in its sole discretion commercially reasonable conditions exist and in exchange for receiving timely payments

---

[1] At the time that the Contract was signed, Plaintiffs had already wired the first $25,000 payment.

ORDER - 3

from Buyer shall complete and deliver the Vessel not later than 180 days from being in receipt of Payment # 2 notwithstanding items outside its control such a vendor supply delays and Acts of God." *Id.*, Ex. B at pp. 2. The Contract also provided for "reasonable access" by the Buyer to inspect the Vessel. *Id.* If the Buyer was "unsatisfied with any details," they were to notify the Manufacturer in writing. *Id.* Further, if the Manufacturer disputed the Buyer's complaint and the parties could not resolve the issue amongst themselves, the dispute was to be submitted to arbitration in Pierce County, Washington. *Id.* The Contract contains an additional arbitration provision, stating that "the parties agree to Pierce County, Washington and that arbitration shall be the sole and final resolution of all disputes between them." *Id.*, Ex. B at pp. 3. The arbitration clause states that "the Parties agree to limit the maximum amount of any Remedy or Awarded Damages of either prevailing party solely to $5,000." *Id.*

After wiring the initial payment of $25,000.00 to Zalnatrav on December 13, 2021, Plaintiffs wired subsequent payments in the amount of $119,750.00 on January 7, 2022, $40,000.00 on April 20, 2022, and $23,694.00 on May 31, 2022. *Id.*, Ex. C, D, E. "Z.Nautical Boatworks" provided to Davidow a statement dated June 6, 2022 that said, "Contract Payments for vessel Hull ID APU00001G223 have been received in full. All invoices are PAID IN FULL, the vessel is hereby released to BUYER under contract terms." Dkt. # 8, Ex. F. The statement appeared to have been signed electronically by Mr. Travis Brandt, who listed himself as "President" of "Zalnatrav, Inc. d.b.a. Z.Nautical Boatworks."

After indicating that the contract payments had been paid in full, Defendants did not provide the Vessel to Plaintiffs. Instead, Brandt repeatedly requested that Plaintiffs agree to more work on the boat, in exchange for further payments. Plaintiffs allege that Defendant Brandt wrongfully spent the installment payments made by Plaintiffs under the contract on "business upgrades, fabricating equipment, and advertising" instead of on

ORDER - 4

the construction of the Vessel. Dkt. # 6 at 7.

Davidow states that Brandt emailed him a change order to paint the bottom hull of the Vessel, which Davidow refused to agree to or pay. Dkt. # 8, ¶ 43. On August 9, 2022, Brandt sent Davidow an email with the subject "Bottom Paint Invoice," telling Davidow that his boat building plan and business were not profitable. Dkt. # 8, Ex. G. Brandt promised Davidow that he was "not in any way intending to add to the price of the boat," but he was looking for "creative ways to raise cash to get this boat in the water…" *Id.* Brandt said that his company needed $200,000 in cash equity by mid-November, and $60,000 of that "sooner rather than later, all of it preferably not tied to a boat…" *Id.* Brandt asked Davidow for a "convertible note/loan, or sale of company shares" in order to support Brandt's business. Brandt assured Davidow that although it was a "super risky thing you guys undertook," Brandt was "plugging away at this beautiful boat 24/7." *Id.* Also included was an invoice for bottom paint in the amount of $6,100.00. *Id.*

Plaintiffs allege that on August 11, 16, 22, 25, 28, and 29, 2022, Brandt forwarded blast emails from Ravenark that solicited investments and offered unsecured securities for sale. Dkt. # 8, ¶ 46. Plaintiffs also allege that the August 29 email contained customer reviews for boats built by Brandt's former company Xtaero. *Id.*

On September 29, 2022, Plaintiffs indicate that in light of them still not having received a boat, they sent Zalnatrav and Brandt a demand letter requesting that the full Contract price of the Vessel, $208,444.00, be returned to them. Dkt. # 8, ¶ 49. Defendant Brandt emailed Plaintiffs' counsel in response on October 5, 2022. Dkt. # 8, Ex. H. Brandt stated that he was "President of Zalnatrav, Inc. and represents Zalnatrav, Inc." *Id.* In the email, Brandt stated that "the boat exists," but indicated that it would cost $90,806 to complete the Vessel and $29,506 was "due and payable immediately." *Id.* Brandt stated that if Plaintiffs did not make the payment within 20 days, Zalnatrav would "use its

ORDER - 5

remedy in Paragraph 16," seemingly referring to the provision of the Contract that allowed the Manufacturer to sell the Vessel in the event of a dispute. *Id.* Brandt accused Davidow of making several change orders to the Vessel that Plaintiffs could not afford, while also purchasing several cars, remodeling his kitchen, and spending money on pets and hobbies. *Id.* Brandt asserted that the parties' agreement provides for delays "outside Manufacturers control" and told Plaintiffs that the first three payments made to Zalnatrav were non-refundable "in any circumstance." *Id.* Brandt ended the email by requesting a "good faith payment" of $10,000 within 24 hours and a plan from the Plaintiffs to pay the rest of the requested money within 30 days. *Id.* According to Brandt, if Plaintiffs made the requested payments to Defendants, "the boat [could] likely be complete by December, however this is not a guarantee, as too many unknowns exist in this environment." *Id.* Brandt then rescinded the transfer of the Vessel and indicated that he would report to the U.S. Coast Guard, state of Washington, and state of Nevada that the Vessel was stolen. He further demanded that the parties engage in arbitration and mediation, as contemplated in the parties' Contract, and suggested that Plaintiffs' counsel act as mediator. *Id.*

      Presumably after failing to receive the demanded payments from Plaintiffs, Brandt sent Plaintiffs an October 17 email stating that Zalnatrav "kept the boat and is selling it or using it for collateral in an attempt to recoup its losses." Dkt. # 8, Ex. I. The next day, Brandt sent a follow-up email stating "Zalnatrav, Inc. does not independently have the funds to complete the boat" and "Travis Brandt has no resources." Dkt. # 8, Ex. J. Brandt stated that while more than $208,000 had been spent on the Vessel, "there [were] plenty more planned and unplanned expenses." *Id.* Additionally, Brandt reiterated that Zalnatrav was "actively pursuing the sale or borrowing activity" concerning the Vessel, including "the option of building others, and including assigning [a] different hull id number." *Id.* However, as an alternative, Brandt offered to release the Vessel to Davidow "as-is" in

ORDER - 6

| | |
|---|---|
| 1 | exchange for $20,000 cash. *Id.* |
| 2 | On November 8, 2022, Plaintiffs filed a complaint against Defendants. Dkt. # 1. |
| 3 | On November 10, Plaintiffs filed the instant motion seeking a TRO. Dkt. # 6. Zalnatrav |
| 4 | was served with the complaint and motion for TRO on November 10, Dkt. # 12, and |
| 5 | Brandt and Ravenark were similarly served on November 15. Dkt. ## 10, 11. On |
| 6 | November 17, Brandt filed a Declaration in Response to Plaintiffs' motion for a TRO. |
| 7 | Dkt. # 14. |
| 8 | On December 2, 2022, Plaintiffs filed a motion for default against Zalnatrav. Dkt. |
| 9 | #16. On December 5, Brandt filed an answer and counterclaim (Dkt. # 17), a motion to |
| 10 | dismiss (Dkt. # 20) and a motion for sanctions (Dkt. #22). On that same day, Zalnatrav |
| 11 | filed a motion to dismiss (Dkt. # 19) and a motion for sanctions (Dkt. # 21). On |
| 12 | December 6, Plaintiffs filed a motion to strike Zalnatrav's answer, motion to dismiss, and |
| 13 | motion for sanctions, because limited liability companies and corporations are required to |
| 14 | be represented by attorneys in court proceedings. Dkt. # 23. This motion to strike is |
| 15 | currently noted for December 23, 2022. |
| 16 | At this time, Plaintiffs allege that they do not have possession of the Vessel. |
| 17 | Brandt states that on November 3, 2022, Zalnatrav, Inc. entered a binding contract with a |
| 18 | broker to sell the Vessel. Dkt. # 20, at 6. |

### III.   LEGAL STANDARD

Like a preliminary injunction, issuance of a TRO is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Under Federal Rule of Civil Procedure 65(b), a party seeking a TRO must make a clear showing (1) of a likelihood of success on the merits, (2) of a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a temporary restraining order in is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (articulating standard

ORDER - 7

for preliminary injunction); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). "But if a plaintiff can only show that there are 'serious questions going to the merits'— a lesser showing than likelihood of success on the merits— then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)). "The elements of a preliminary injunction test must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). "'Serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* (citing *Wild Rockies*, 632 F.3d at 1135).

## IV.    DISCUSSION

a. Temporary Restraining Order

### *1. Likelihood of Success on the Merits*

Plaintiffs contend that they have a strong likelihood of success on the merits of their claims. They assert RICO, fraud, breach of contract, conversion, and Washington Consumer Protection Act claims. Defendant Brandt opposes the granting of a temporary restraining order, arguing that it will immediately close his business and render the Vessel "nearly worthless no matter who eventually owns or sells it." Dkt. # 14 at 12.

*RICO*

Plaintiffs allege that Brandt, on behalf of Zanatrav, conspired to, formed, and engaged in an enterprise affecting interstate commerce, in violation of 18 U.S.C. § 1962.

ORDER - 8

Dkt. # 6 at 10-11. Plaintiffs assert that Defendants conspired to wrongfully use Plaintiffs' funds paid under the Contract for Brandt's personal use and for the growth and advertisement of Ravenark. *Id.*  Further, Plaintiffs allege that Defendants committed several instances of wire fraud in furtherance of this scheme when Defendants solicited Plaintiffs and the public for capital, resulting in at least four wire transfers of funds. *Id.*

It is "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity…to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities which affect, interstate or foreign commerce." 18 U.S.C. § 1962. Acts of wire fraud constitute "racketeering activity." 18 U.S.C. §1961; *see also* 18 U.S.C. §1343 (defining fraud by wire, radio, or television). "A 'pattern of racketeering activity' is defined in the statute to be 'at least two acts of racketeering activity' occurring within a ten year period." *Allstate Ins. Co. v. Tacoma Therapy, Inc.*, 204 F. Supp. 3d 1181, 1186 (W.D. Wash. 2016) (quoting 18 U.S.C. § 1961(5)). "To constitute a 'pattern,' the predicate acts must be 'related' and 'continuous.'" *Id.* (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). To be "related," the acts must be similar in "purpose, participants, victims, methods, or other distinguishing characteristics," and not "isolated or sporadic." *Howard v. America Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (citing *H.J.*, 492 U.S. at 240).

Here, the Court finds that the Plaintiffs have shown serious questions going to the merits of their RICO claim. Plaintiffs' wire transfer receipts establish multiple payments made from Plaintiffs' bank account in Nevada to Defendant Zalnatrav in Washington state within the span of several months, all for the purpose of fulfilling the Contract and eventually securing the Vessel. *See* Dkt. # 8, Ex. A, C, D, E. While the parties disagree as to which party, if any, has breached the Contract, it is clear from Defendant Brandt's

ORDER - 9

emails to Plaintiffs that (1) Brandt has received approximately $208,444 via wire transfer from Plaintiffs under the Contract; (2) Brandt still has possession of the Vessel; (3) Brandt has requested further payments beyond the Contract price from Plaintiffs in order to release the Vessel; and (4) Brandt has stated multiple times that he intends to sell the Vessel to another, unknown third party. Plaintiffs have shown serious questions as to the merits of their RICO claim.

*Fraud*

A party asserting a fraud claim must show: (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon it, and (9) damages suffered by the plaintiff. *Stieneke v. Russi*, 145 Wn.App. 544, 563 (2008). Plaintiffs allege that Brandt falsely represented to Plaintiffs that he would build a boat while knowing that neither he nor Zalnatrav had the financing, infrastructure, logistics, or planning to actually bring the construction to completion. Dkt. # 6 at 11. Further, Plaintiffs allege that Brandt and Zalnatrav induced Plaintiffs into paying the full Contract price for the Vessel while knowing that he did not intend to build the Vessel for that same price. *Id.* at 12. Finally, Plaintiffs allege that they executed the Contract because Defendants did not disclose that the installment payments would be misapplied to purposes unrelated to the construction of the Vessel. *Id.* Defendant Brandt counters that he did not intend to defraud or harm Plaintiffs in any way. Dkt. # 14, ¶ 82.

The documentation produced by Plaintiffs, particularly Defendant Brandt's own statements regarding the progress and whereabouts of the Vessel and his subsequent demands for further payments in excess of the Contract price in order to release the Vessel, make a prima facie case of fraud. Defendants' initial statements—that Zalnatrav would manufacture a boat for Plaintiffs for a purchase price of $202,951.00—conflict

sharply with Brandt's later solicitation for funding for his company, his statements that neither he nor Zalnatrav have the funds to finish the boat, and his demands for thousands more dollars to either complete the Vessel or release it "as-is." Plaintiffs have shown serious questions as to the merits of their fraud claim.

*Breach of Contract*

To prevail on a breach of contract claim, Plaintiffs must show: (1) the existence of a valid contract, (2) breach of that contract, and (3) damages resulting from the breach. *Merrill v. Crown Life Ins. Co*, 22 F.Supp.3d 1137, 1145 (citing *Northwest Independent Forest Manufacturers v. Dept. of Labor and Industries*, 78 Wn.App. 707, 712 (1995)). Here, both parties acknowledge the existence of the Contract; however, they disagree as to which party breached the duties imposed by the Contract. Plaintiffs assert that Zalnatrav breached the Contract when it did not deliver the Vessel within 180 days after receipt of the second installment payment made by wire transfer. Dkt. # 6, 12. Brandt, on the other hand, argues that under the Contract Zalnatrav can rightfully charge Plaintiffs for cost overruns such as parts and labor, and Plaintiffs' refusal to pay subsequent invoices constitutes a breach. Dkt. # 14, ¶ 77-80. Additionally, Brandt asserts that the parties are required to engage in arbitration to solve all disputes arising out of the Contract. *Id.*, ¶ 89.

At bottom, Plaintiffs have paid over $200,000 for a boat that they have not received and have been told will be sold to an unknown third person. While the parties' Contract contemplates arbitration in the event of disputes, particularly over the "details" of the Vessel, Dkt. # 8, Ex. B, a TRO would not prevent the parties from engaging in arbitration or mediation at a later date. At this point, a TRO would serve to simply preserve the status quo while the parties move forward with litigation or other alternative

ORDER - 11

dispute resolution. The record currently before the Court suggests that Plaintiffs have raised serious questions on the merits of their breach of contract claim.

*Conversion*

A claim for conversion requires a showing of: (1) willful interference with chattel belonging to the plaintiff, (2) by either taking or unlawful retention, (3) thereby depriving the owner of possession. *Burton v. City of Spokane*, 16 Wn.App. 2d 769, 773 (2021). All parties concede that Brandt and Zalnatrav have retained the Vessel even after Plaintiffs have requested possession. Brandt's multiple communications to Plaintiffs requesting various sums of money for the eventual or immediate release of the Vessel—even after Plaintiffs have paid the Contract amount—establish willfulness. While Brandt disputes that the Vessel belongs to Plaintiffs, his ever-changing demands for cash in exchange for the release of the boat "as-is" suggest that Brandt is aware that his refusal to release the Vessel has interfered with their rightful ownership. Further, Brandt's threats to sell or dispose of the Vessel suggest that Defendants have no intention of transferring ownership to Plaintiffs. *See Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1105 (W.D. Wash 2011) (Washington law recognizes claims for conversion in a variety of circumstances, including wrongfully detaining, destroying or altering, exceeding the authorized use of, and misusing chattel). While Brandt asserts that he did not intend to defraud or harm Plaintiffs, Dkt. # 14, ¶ 82, good faith is not a defense to conversion. *Exxon Mobil Corp. v. Freeman Holdings of Washington, LLC*, 779 F. Supp. 2d 1171, 1181 (E.D. Wash. 2011). The Court finds that Plaintiffs have raised serious questions as to the merits of their conversion claim.

*Washington Consumer Protection Act*

To establish a CPA claim, Plaintiffs must show: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) an

ORDER - 12

injury to business or property, and (5) that the injury was proximally caused by the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535-39 (Wash. 1986). As to the first prong, Plaintiffs need not show that Defendants' actions were *intended* to deceive, but that the acts had the *capacity* to deceive a substantial portion of the public. *Id.* at 785. Here, Brandt's varying statements regarding the status of the Vessel, refusal to give the Vessel to Plaintiffs, and recent threats to sell the Vessel are both unfair and deceptive acts. Additionally, Defendants' blast solicitation communications sent over email and social media had the capacity to deceive both Plaintiffs and potential investors in Brandt's boat-building venture. Dkt. # 8, ¶ 46. And because the dispute between the parties involves the sale of assets or services, Plaintiffs clearly satisfy the "trade or commerce" requirement. *Hangman Ridge*, 105 Wn.2d at 785.

Further, Defendants' public solicitations for investments from the general public suggest that many consumers are likely to be affected by Defendants' actions and that there is a real and substantial potential for repetition of Brandt, Zalnatrav, and Ravenark's actions. *Id.* at 790 (applying CPA public interest test). Here, "the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion [as Plaintiffs] changes a factual pattern from a private dispute to one that affects the public interest." *Id.* Finally, Plaintiffs have been injured by the loss of over $200,000 and that injury has been caused by actions of Defendants. The Court finds that Plaintiffs have shown that there are serious questions going to the merits of their CPA claim.

### 2. Irreparable Harm

Plaintiffs have shown that they are likely to suffer irreparable harm in the absence of a TRO. This assertion is underscored by Brandt's own recent statement that on November 3, 2022, he entered a contract with a broker to sell the Vessel, in order to

ORDER - 13

recoup his own losses. Dkt. # 20 at 6. Plaintiffs allege, and Brandt's statements appear to confirm, that Defendants have no other resources from which to finish the manufacturing of the Vessel. This also means that if Defendants are allowed to sell of or dispose of the Vessel, Plaintiffs may have no other route to recovery.

### 3. The Balance of Equities

The balance of equites tips sharply in the Plaintiffs' favor. *See Shell Offshore*, 709 F.3d at 1291 (when a plaintiff shows that there are "serious questions going to the merits," a preliminary injunction may issue if the balance of hardship tips sharply in plaintiff's favor). In granting Plaintiffs' motion, the Court is maintaining the status quo until the facts may be further developed. This is particularly important given that Defendants have threatened multiple times to sell the Vessel or use it as collateral in securing other loans. In light of such a dichotomy—risking the potential sale or disposal of the Vessel versus maintaining the Vessel in its current state—the balance of the equities tips sharply in favor of Plaintiffs.

### 4. The Public Interest

Finally, the public interest will be served by granting a TRO. As discussed, Defendants have previously solicited the public for investments in Brandt's boat-building enterprises, and Brandt has recently sought third party buyers for the Vessel. Indeed, Brandt claims that he has entered into a contract to sell the Vessel to an as-unknown third party. Dkt. # 20 at 6. The public interest is served if the status quo is maintained while the parties resolve the instant dispute.

**b. Motion for Order of Default**

Plaintiffs seek entry of an order of default against Zalnatrav. Dkt. # 16. As of the time Plaintiffs filed their motion for default, December 2, 2022, more than 21 days had

ORDER - 14

lapsed since Zalnatrav was served and Zalnatrav had not filed an answer or otherwise responded to the complaint. *See* Dkt. # 12. While the Federal Rules of Civil Procedure require a defendant to serve an answer within 21 days of being served with the summons or complaint, the Court notes that Brandt, a *pro se* litigant, filed an Answer on behalf of Zalnatrav soon thereafter on December 5. Fed. R. Civ. P. 12(a)(1)(A)(i); *see also* Dkt. # 17.

Under Federal Rule of Civil Procedure Rule 55, "the filing of a late answer is analogous to a motion to vacate a default, because the party filing the late answer receives the same opportunity to present mitigating circumstances that it would have had if a default had been entered and it had moved under Rule 55(a) to set it aside." *Barefield v. HSBC Holdings PLC*, Case No. 1:18-cv-00527-LJO-JLT, 2019 WL 918206, at *2 (E.D. Cal. February 25, 2019). Further, the Court, as part of its inherent power, has the authority to impose sanctions, such as striking an untimely answer, for violations of Rule 12(a). *Id.* While Brandt's answer does not clearly explain why it was not timely filed, Brandt does indicate that he communicated with Plaintiffs' counsel regarding a briefing schedule. Indeed both parties have filed several substantive pleadings since Brandt filed his answer. At this time, the Court declines to enter an order of default against Zalnatrav, but warns Defendants that the Court will not tolerate late filings in the future. *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (default judgments ordinarily disfavored so that cases may be decided upon their merits where reasonably possible). Plaintiffs' motion for an order of default against Zalnatrav is **DENIED**. Dkt. # 16.

//
//
//
//
//

ORDER - 15

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for temporary restraining order (Dkt. # 6) is **GRANTED**. Plaintiffs' motion for an order of default is **DENIED.** It is **ORDERED** that Defendants are hereby enjoined from and shall cease transferring title, selling, encumbering, borrowing against or using as collateral, destroying, moving, or otherwise disposing of or transporting the 2022 Ravenark Bootlegger (the "Vessel"). It is further **ORDERED** that this Order shall remain in effect until thirty (30) days from the date of this Order, unless otherwise ordered by the Court.

DATED this 8th day of December, 2022

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 16