The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID DAVIDOW and SHERYL DE MERS, domestic partners, | Civil Action No. 2:22-cv-01594-RAJ |
| Plaintiffs, | **ORDER** |
| v. | |
| ZALNATRAV, INC., a Washington corporation; RAVENARK, a Washington sole proprietorship; TRAVIS B. BRANDT and JANE DOE BRANDT, husband and wife, and the marital community composed thereof, | |
| Defendants. | |

Pending before the Court is Plaintiffs/Counterclaim Defendants David Davidow's and Sheryl De Mers's ("Plaintiffs," "Davidow," or "De Mers") Motion for Partial Summary Judgment (Dkt. # 123), Defendant/Counterclaim Plaintiff Travis Brandt's ("Defendant" or "Brandt") Motion for Rule 56 Summary Judgment Dismissal (Dkt. # 130), Defendant's Motion to Compel a Settlement Hearing (Dkt. # 131), Defendant's

ORDER - 1

Motion Regarding Attorney's Fee Award of $3,712 (Dkt. # 147), and Defendant's Motion for 17% Interest (Dkt. # 148). The parties and counsel presented oral argument to this Court on November 17, 2023, and the Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**, Defendant's Motion for Rule 56 Summary Judgment Dismissal, Motion to Compel a Settlement Hearing, Motion Regarding Attorney Fee Award, and Motion for 17% Interest are **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the purchase of a vessel, the 2022 Ravenark Bootlegger ("the Vessel") by Plaintiffs Davidow and De Mers from Defendants Travis Brandt, his Washington-based boat-building venture Zalnatrav, Inc. ("Zalnatrav"), and the sole proprietorship Ravenark. Dkt. # 14 ¶¶ 5, 6, 15. The Court and parties are familiar with the background facts of this dispute, which have been recounted in the parties' briefing and in several prior orders, including: the December 8, 2022 order granting Plaintiffs' request for a temporary restraining order ("TRO") enjoining Defendants from disposing of the Vessel (Dkt. # 28), the January 13, 2023 order granting Plaintiffs' request for a preliminary injunction (Dkt. # 47), and the July 12, 2023 order extending the preliminary injunction until trial (Dkt. # 108). This Court has previously found that Plaintiffs have made a clear showing for both a TRO and a preliminary injunction based on the factors set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Dkt. ## 41, 47; *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 893 n.7 (noting that the standards for a temporary restraining order and for a preliminary injunction are "substantially identical").

ORDER - 2

**a.) The Parties' Contract**

On December 10, 2021, Davidow and Brandt signed a contract for the purchase and manufacture of the Vessel, a Bootlegger 22 monohull aluminum fishing boat, with a purchase price of $124,719.00. Dkt. # 124, ¶ 8, Ex. B. This December 10 contract provided that Plaintiffs (the "Buyer") pay for the Vessel in three installments. *Id.* On December 13, 2021, Davidow wired a payment of $25,000.00 from the Reno City Employees Federal Credit Union to Zalnatrav's JP Morgan Chase bank account. *Id.*, ¶ 10, 11, Ex. C. After this initial wire transfer, the parties discussed upgrades to the Vessel, including larger engines. *Id.* ¶ 12. On December 15, 2021, Davidow and Brandt executed a new contract with a purchase price of $171,010.00. *Id.* ¶ 13, Ex. D. Plaintiffs allege that at this point, Brandt informed them that the Vessel would have to be re-engineered to accommodate the larger engines. *Id.* ¶ 14. Davidow and Zalnatrav then signed a December 21, 2021 "Agreement of Purchase and Sale for Manufacture of New Vessel." *Id.* ¶ 15, Ex. E ("Contract"). The Contract provided that Zalnatrav (the "Manufacturer") would manufacture and sell:

- A 2022 Ravenark Bootlegger 24.5-foot monohull aluminum boat
- Powered by TWIN Suzuki 140hp Outboards.
- Complete with customer options as specified in Appendix A, attached, and incorporated.
- Including a dual axle trailer with bunks. *Id.*

The Contract provided that the purchase price, $202,951.00, would be paid in three installments: the first payment of $25,000.00 due at signing, a second payment of $119,750.00 due approximately 10-20 days after the first payment, and a third and final payment of $58,201.00 due approximately 30-40 days after the second payment. *Id.* If the Buyer did not make payments in full by the due date, the Manufacturer could attempt to negotiate "acceptable terms to remedy the Buyers' late payment default." *Id.* However, if

the parties could not reach "reasonable terms" within 20 days to "remedy the new agreement," then the Manufacturer could cancel the Agreement and (1) "Keep and retain for Manufacturer's own benefit all payments of Buyer," (2) "Keep and re-sell the vessel to recoup its loss and defaulted Buyer shall have no claim on those funds." *Id.* However, these two options would be a "last resort" if negotiations were unsuccessful after 20 days. *Id.*

Moreover, the Contract states that "Manufacturer shall begin manufacturing the Vessel when in its sole discretion commercially reasonable conditions exist and in exchange for receiving timely payments from Buyer shall complete and deliver the Vessel not later than 180 days from being in receipt of Payment # 2 notwithstanding items outside its control such a vendor supply delays and Acts of God." *Id.* The Contract also provided for "reasonable access" by the Buyer to inspect the Vessel. *Id.* If the Buyer was "unsatisfied with any details," they were to notify the Manufacturer in writing. *Id.* Further, if the Manufacturer disputed the Buyer's complaint and the parties could not resolve the issue amongst themselves, the dispute was to be submitted to arbitration in Pierce County, Washington. *Id.* The Contract contains an additional arbitration provision, stating that "the parties agree to Pierce County, Washington and that arbitration shall be the sole and final resolution of all disputes between them." *Id.* The arbitration clause states that "the Parties agree to limit the maximum amount of any Remedy or Awarded Damages of either prevailing party solely to $5,000." *Id.*

After wiring the initial payment of $25,000.00 to Zalnatrav on December 13, 2021, Plaintiffs wired a payment in the amount of $119,750.00 on January 7, 2022. *Id.*, Ex. F. On April 14, Brandt emailed Davidow a change order to install a fridge and change the Vessel's starboard-side bench which increased the third installment from $58,201.00 to $63,964.00. *Id.* ¶ 19. Ex. G. On April 20, Davidow requested via email to split the third installment into two payments due to an unexpected veterinary bill, to

which Brandt agreed. *Id.* ¶ 21, 25, Ex. H, J. Plaintiffs then sent subsequent payments of $40,000.00 on April 20, 2022 and $23,694.00 on May 31, 2022. *Id.*, Ex. I, K. Plaintiffs paid a total of $208,444.00 under the Contract.

"Z.Nautical Boatworks" provided to Davidow a statement dated June 6, 2022 that said, "Contract Payments for vessel Hull ID APU00001G223 have been received in full. All invoices are PAID IN FULL, the vessel is hereby released to BUYER under contract terms." *Id.*, Ex. L. The statement appeared to have been signed electronically by Brandt. *Id.* Further, Brandt provided to Davidow via email a PDF version of this document with the words "PAID IN FULL" written on both the Contract and the Vessel's specification sheet. *Id.*, Ex. M. This document appeared to be signed and dated "6-6-2022" by Brandt. *Id.* On the last page of the document, the words "PAID IN FULL" are underlined. *Id.*

On August 9, 2022, Brandt emailed Davidow a document named "Invoice 1008" for bottom paint and stated that he was unable to complete the manufacture of the Vessel due to lack of funds. *Id.*, Ex. N. In the email, Brandt stated, "the boat plan and business plan are converging for a longer period of time than expected," and stated that his company needed $200,000 in cash equity by November, and $60,000 "sooner rather than later." *Id.*, Ex. N. Nevertheless, Brandt stated he was "plugging away at this beautiful boat 24/7." *Id.* A few days later, Brandt asked Davidow for $6,100 via text message. Davidow rejected Brandt's proposal for bottom paint. *Id.*, Ex. O.

In August 2022, Brandt sent six emails to members of the Ravenark list-serve. *Id.*, Ex. P. In his August 11 email, he stated that his company needed cash to pay bills. *Id.* He stated that he would prefer to raise $200,000 by selling shares in the company, borrowing money in a convertible note, or by selling additional boats. *Id.* In an August 16 email, Brandt reiterated that he was looking for new contracts and to raise funds. *Id.* In August 22 and 25 emails, he stated that he sought $200,000 in funding and noted that "Time [was] of the Essence." *Id.* His August 29 email touted that he was "pretty tenacious when

it comes to building a profitable boat building firm[,]" and included two positive reviews of his work with former company Xtaeros. *Id.*

Plaintiffs retained counsel, who sent Brandt a demand letter. Dkt. # 125 ¶ 11. In October 2022, Brandt responded to Plaintiffs' counsel with a $6,100 invoice for "bottom paint," a $19,506 invoice for "DEMO BOAT PROGRAM RESCINDED," and a $55,000 invoice for "Cost Overruns of Business, Environment and Labor Conditions." *Id.*, Ex. E. Ultimately, Plaintiffs did not receive the Vessel, and the Court understands that it is currently located at the Maxi-Space facility in University Place, Washington. Dkt. # 124, Ex. H. Plaintiffs brought the instant suit in November 2022. Dkt. # 1.

**b.) Status of Defendants**

At the time of the filing of the Complaint, Brandt was the president and sole owner of Zalnatrav. Dkt. # 14 ¶5, 6; Dkt. #1 ¶ 2. On February 17, 2023, Brandt filed articles of dissolution with the office of the Washington Secretary of State in order to dissolve Zalnatrav and filed proof of same with this Court. Dkt. # 59. On March 3, 2023, the Clerk entered an order of default as to Zalnatrav due to Brandt's failure to obtain representation for the entity. *See* LCR 83.2(b)(4). On March 15, 2023, the Clerk entered an order of default as to Ravenark. On June 22, 2023, this Court denied Plaintiffs' motion for default judgment against both Zalnatrav and Ravenark.

**c.) Defendant Brandt's Prior Transactions**

Plaintiffs are not the first individuals with whom Brandt has contracted to manufacture aluminum boats. It also appears that Plaintiffs are not the first individuals to experience a breakdown in their business relationship with Brandt, leading to legal proceedings. Plaintiffs submit the declaration of Steve Gavriloff, an individual who states that he purchased a boat from Brandt after he saw an ad for Brandt's then-company Southpaw Boats. Dkt. #125, Ex. A. Gavriloff paid Brandt and Brandt's company Aerohead $40,000 to build a monohull-aluminum fishing vessel. *Id.* According to

1   Gavriloff, Brandt failed to meet deadlines and eventually indicated that he would not be

2   able to complete construction of the vessel or refund Gavriloff any money. *Id.* Although

3   Gavriloff sued Brandt in King County Superior Court in 2006, bringing claims for fraud,

4   breach of contract, and CPA violations, *id.*, Ex. B, his suit was unsuccessful and

5   Gavriloff did not recover the money he paid Brandt. *Id.*

6        Plaintiffs also submit a copy of a 2018 complaint filed by Snoqualmie resident

7   Jacobus Du Preez against Brandt and his then-company Xtaeros in King County Superior

8   Court. *Id.*, Ex. C. Du Preez alleged that he loaned Brandt and Xtaeros $121,500 to be

9   used toward the construction of a vessel. *Id.* He further alleged that Brandt ran out of

10  money and requested (and received) several cash infusions from Du Preez before

11  informing him that Brandt would not repay the loan in full. *Id.* Du Preez obtained a

12  judgment in the amount of $246,249.63 that was later discharged by Brandt in

13  bankruptcy proceedings. *Id.*, Ex. D.

14       **d.) Plaintiffs' Expert Witnesses**

15       In support of this suit, Plaintiffs provide the opinions of several experts. First,

16  naval architect Craig Sylvester performed a visual inspection of the Vessel at the Maxi-

17  Space facility in University Place, Washington in February 2023. Dkt. # 125 ¶ ¶ 14, 22,

18  Ex. H (Sylvester Report). Mr. Sylvester, a former U.S. Navy mustang officer and

19  Washington State licensed mechanical engineer, provides the opinion that "the initial

20  construction phase of the vessel, [the] fabrication of the hull, remains incomplete, with

21  significant work remaining in order to move to the next build phases, including an initial

22  sea trial." *Id.* at 10. Further, Mr. Sylvester states that the Vessel is "unseaworthy" and

23  "does not meet minimum water-tight integrity requirements, with gaps in critical

24  structure." *Id.* Marine surveyor Freddie Rosado appraised the Vessel based on Mr.

25  Sylvester's inspection photographs. *Id.* ¶¶ 15, 23, Ex. I (Rosado Report). Mr. Rosado

26  estimates the cost of building a similar vessel from scratch to be $134,146 and estimates

the Vessel's scrap value at $3,777.00. *Id.* at 3. CPA and certified fraud investigator Steve Roberts conducted a forensic accounting of the transactions in this matter, including the parties' Contract, Defendant Brandt's deposition transcript and discovery responses, emails between the parties, the valuation of the Vessel conducted by Mr. Rosado, and YouTube videos posted by Defendants. *Id.* ¶¶ 19, 20, Ex. G at 1-2 (Roberts Report). Mr. Roberts opines that the circumstances of this matter present several "red flags" of fraud: the undercapitalization of Defendant's businesses and transfer of business risk to customers; the use of Ponzi-type operating schemes wherein a customer—Davidow— made upfront payments in exchange for a product that could not be delivered without cash from other sources; the lack of normal and customary accounting records; and unsupported and speculative counterclaims, such as Brandt's claim that he has lost value to his business interests due to Plaintiffs' actions. *Id.* at 3-5.

Plaintiffs now move for summary judgment as a matter of law on their claims of breach of contract, fraud, conversion, and violations of the Washington Consumer Protection Act (CPA), summary judgment dismissal of Defendant's counterclaims of fraud, breach of contract, and malicious prosecution, and the imposition of a constructive trust. Dkt. # 123. At oral argument, Plaintiffs indicated that were they to prevail on their motion for partial summary judgment, they were inclined to dismiss their civil RICO claim. Dkt. # 152. Defendant seeks summary judgment dismissal of Plaintiffs' fraud, breach of contract, conversion, and CPA claims. Dkt. # 130.

## II.    LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving

1   party will have the burden of proof at trial, it must affirmatively demonstrate that no

2   reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty*

3   *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party

4   will bear the burden of proof at trial, the moving party can prevail merely by pointing out

5   to the district court that there is an absence of evidence to support the non-moving party's

6   case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the

7   opposing party must set forth specific facts showing that there is a genuine issue of fact for

8   trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The

9   court must view the evidence in the light most favorable to the nonmoving party and draw

10  all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530

11  U.S. 133, 150-51 (2000).

12          However, the nonmoving party must present significant and probative evidence to

13  support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d

14  1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will

15  not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

16  1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d

17  626, 630 (9th Cir. 1987). The court need not, and will not, "scour the record in search of

18  a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see*

19  *also White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (explaining

20  that the court need not "speculate on which portion of the record the nonmoving party

21  relies, nor is it obliged to wade through and search the entire record for some specific

22  facts that might support the nonmoving party's claim"). "[T]he mere existence of *some*

23  alleged factual dispute between the parties will not defeat an otherwise properly

24  supported motion for summary judgment; the requirement is that there be no *genuine*

25  issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis original).

26

### III.    DISCUSSION

### a.) Plaintiffs' Request for Summary Judgment

*1.  Piercing the Corporate Veil of Zalnatrav*

As a preliminary matter, Plaintiffs argue that this Court should pierce the corporate veil of Zalnatrav. Dkt. # 123 at 17. According to Plaintiffs, Defendant Brandt abused Zalnatrav by commingling and spending Plaintiffs' funds on "food, gas, things that [Brandt] needed to live." *Id.* (citing Dkt # 125, Ex. J ("Brandt Dep.") at 98:7-8). Further, Plaintiffs argue, disregarding Zalnatrav's corporate form is necessary to prevent unjustified loss to Plaintiffs. Defendant Brandt does not address Plaintiffs' request in his Response. Dkt. # 126.

"The doctrine of disregarding the corporate entity or piercing the corporate veil is an equitable remedy imposed to rectify an abuse of the corporate privilege." *Orbridge LLC v. Safari Legacy, Inc.*, No. 3:20-cv-6259-BJR, 2022 WL 4094527, at *2 (W.D. Wash. Sep. 7, 2022) (citing 1 W. Fletcher, Cyclopedia of the Law of Private Corporations, s 41.3 (rev. ed. 1974)). Generally, a corporation is regarded as a separate legal person; however, in "exceptional situations" a court may "disregard the separate entity of the corporation and fasten liability directly on the corporation's stockholder and in favor of the person dealing with the corporation." *Harrison v. Puga*, 4 Wn.App 52, 62, 480 P.2d 247 (1971). The Court must consider whether the corporate form has been "intentionally used to violate or evade a duty," and whether disregard of the corporate form is "necessary to and required to prevent unjustified loss to the injured party." *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 409, 645 P.2d 689 (1982) (citing *Morgan v. Burks*, 93 Wm.2d 580, 585, 611 P.2d 751 (1980)). Such is the case here.

The evidence before the Court demonstrates that Brandt, as president and sole owner of Zalnatrav, Dkt. # 14 ¶ 5, 6, abused the corporate form. Here, Brandt's actions—

taken by and through Zalnatrav—constitute fraud, *see* discussion *infra* Section III(a)(3), and have clearly harmed Plaintiffs and caused them unjustified loss. Disregarding the corporate form is especially appropriate here given Brandt's dissolution of Zalnatrav during the pendency of this matter in an apparent attempt to evade Plaintiffs' claims. *See* Dkt. # 59 (Notice re Articles of Dissolution); s*ee also Truckweld Equip. Co., Inc. v. Olson*, 26 Wn.App. 638, 643, 618 P.2d 1017 (1980) ("Typically, the injustice which dictates a piercing of the corporate veil is one involving fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment.") (citation omitted). Plaintiffs' request to disregard the corporate form of Zalnatrav is **GRANTED**.

   *2.) Breach of Contract*

   Plaintiffs move for summary judgment on their breach of contract claim, Dkt. # 123 at 14, and Brandt seeks dismissal of this claim, Dkt. # 130 at 4. The elements of a claim for breach of contract are: (1) the existence of a valid contract, (2) breach of that contract, and (3) damages resulting from the breach. *Merrill v. Crown Life Ins. Co*., 22 F.Supp.3d 1137, 1145 (citing *Nw. Indep. Forest Mfr. v. Dept. of Labor and Indus.*, 78 Wn.App. 707, 712, 899 P.2d 6 (1995)). According to Brandt, "Plaintiffs do not actually establish a breach of contract by Mr. Brandt except that Mr. Davidow paid $208,444 and did not receive the boat." Dkt. # 124 ¶ 18.

   Here, Plaintiffs establish each of the elements of their breach of contract claim. The parties signed several contracts for the construction of the Vessel, including the December 10, 2021 contract, Dkt. # 124 ¶ 8, Ex. B, the December 15, 2021 contract, *Id.*, Ex. D, and the December 21, 2021 contract. *Id.*, Ex. E. Significantly, both parties acknowledge the existence of the Contract. Next, the evidence establishes that Defendant Brandt breached the Contract signed with Plaintiffs. In interpreting contracts, courts must "give words … their ordinary, usual, and popular meaning unless the entirety of the

agreement clearly demonstrates a contrary intent." *Hearst Commc'ns, Inc. v. Seattle Times*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005). Here, the Contract is clear: Plaintiffs paid Defendant a total of $208,444, via four wire transfers, in exchange for the manufacture and purchase of the Vessel, which was to be delivered within 180 days of Defendant's receipt of the second installment payment, which occurred on January 7, 2022. *See* Dkt. # 124, Exs. C, F, I, K. Indeed, on June 6, 2021, Defendant sent to Plaintiff Davidow a copy of the Contract with the words "PAID IN FULL" written on it, and Mr. Brandt's signature directly below. *Id.*, Ex. M. It is undisputed that the Vessel was never delivered to Plaintiffs, and based on the opinion of Plaintiffs' expert Freddie Rosado, what does exist of the Vessel is incomplete and not seaworthy. *See* Dkt. # 125, Ex. I.

Finally, Plaintiffs have experienced economic loss as a result of Defendant's breach—to the tune of the $208,444 purchase price. Defendant argues that Davidow could have "[paid] more and [waited] longer" for the Vessel in order to avoid incurring damages, but offers no reason why Plaintiffs should be required to pay beyond the contracted-for price in exchange for the Vessel. Dkt. # 145 at 9. Brandt does not allege that the Vessel is complete, and admits that, in an attempt to recoup what he considers *his* loss, he previously entered into a contract to sell the boat to an unknown third party. Dkt. # 20 at 6.

Defendant implores the Court to consider various statements between Brandt and Davidow in emails and texts concerning both parties' hopes that the Vessel would be a prototype and a "seed" establishing Brandt's fledgling boat-building business. Dkt. # 145 at 9. But because "clear and unambiguous contracts are enforced as written," *Grey v. Leach*, 158 Wn.App. 837, 850, 244 P.3d 970 (2010), and because Defendant has not raised a genuine issue of material fact for trial with regard to Plaintiffs' breach of contract claim, Plaintiffs' request for summary judgment on their breach of contract claim is

1   **GRANTED**. Defendant's request for summary judgment dismissal of Plaintiffs' breach

2   of contract claim is **DENIED**.

3       *3) Fraud*

4       A party asserting a fraud claim must show: (1) representation of an existing fact,

5   (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the

6   speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity,

7   (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon

8   it, and (9) damages suffered by the plaintiff. *Stieneke v. Russi*, 145 Wn.App. 544, 563,

9   190 P.3d 60 (2008). Plaintiffs move for summary judgment on their fraud claim, arguing

10  that Defendant represented that he would build them "the best boat Nevada has ever

11  seen," Dkt. # 124 ¶¶ 5, 6, while knowing that he had no engineering or naval architecture

12  qualifications. *See* Brandt Dep. at 266:10-18 (When asked if he was an engineer, Brandt

13  answered, "I like to think of myself as skilled in various arts."). Plaintiffs argue that

14  Defendant further misrepresented that he would use the money paid by Plaintiffs to

15  manufacture the Vessel, because he lacked the necessary expertise and infrastructure to

16  do so without a further infusion of cash. Brandt Dep. at 92:20-93:4. Instead of using the

17  funds supplied by Plaintiffs to construct the Vessel, according to Plaintiffs, Brandt

18  instead spend the money on personal expenses and advertising for his companies. Dkt. #

19  142 at 6. And when the money ran out, Brandt demanded further payments in exchange

20  for the Vessel. *Id.*

21      The record before the Court establishes each of the elements of fraud. Plaintiffs

22  paid Defendants $208,440 via wire transfer. Brandt Dep. at 96: 2-4. Defendant Brandt

23  then spent the money freely, taking approximately thirty "owners draws" to not only pay

24  himself, Brandt Dep. at 320:20-23, but also to obtain his pilot's license, *id.*, 308:13-15,

25  and pay for meals, dental and vision care, plane tickets, gasoline, tolls, rideshare trips,

26  and advertising, according to Defendant Brandt's records. Dkt. # 142, Ex. B. And the

money paid by Plaintiffs constituted nearly the entirety of the funds in the Zalnatrav account from which Brandt made the various withdrawals. Brandt Dep. at 365-66. After Brandt's various expenditures, at the time that Zalnatrav was dissolved, the associated bank account had a balance of less than $20,000. Brandt Dep. 97:23-25. Brandt then spent those remaining funds on "food, gas, [and] things that [he] needed to live." Brandt Dep. 98:6-8.

Critically, during the time period that Brandt spent the contents of Zalnatrav's account on various personal expenses, he represented to Plaintiffs that, although he needed a $200,000 cash infusion to "get this boat on the water," he was "plugging away at this beautiful boat 24/7," Dkt. # 8, Ex. G, leading Plaintiffs to believe the Vessel would indeed be completed. However, Defendant Brandt admitted in his deposition that he did not have the funds to complete the Vessel. Brandt Dep. at 402:17-21 ("Q: Could you have finished it? Did you have the funds without asking [Davidow] for more money or anybody else…? A: I don't know. Probably not.")

It was in August 2022 that Defendant created a $6,111.00 invoice for bottom paint and requested further payments from Plaintiffs. Dkt. # 124, Ex. N. Soon thereafter, Defendant again requested $80,606.00 from Plaintiffs in the form of further invoices that were ostensibly for bottom paint, supplies needed to complete the Vessel, and as penalties for Plaintiffs' prior lack of payments. *Id.*, Ex. O. Notably, at his deposition, Brandt admitted that he planned to use the requested funds not for bottom paint, but to pay welders. Brandt Dep. at 349 9-11, 19-22. It was, and appears to still be, Brandt's position that he had the contractual right to "send [Davidow] a bill" beyond the agreed-upon purchase price for the Vessel and expect Plaintiffs to pay. Brandt Dep. 370:20-23, 373:10-20. However, the Court is not persuaded. It is clear that Plaintiffs relied on Brandt's untrue statements as to his progress in manufacturing the Vessel to their detriment. Brandt's theory guiding his business activities— that what benefits the

1   business (and Brandt himself) also benefits Plaintiffs— does not provide an escape hatch

2   to avoid responsibility for his misrepresentations. Plaintiffs are entitled to summary

3   judgment on their fraud claim, and their request is **GRANTED**. Defendant Brandt's

4   request to dismiss Plaintiffs' fraud claim is **DENIED**.

5       *4.) Conversion*

6       Conversion is the "unjustified, willful interference with a chattel which deprives a

7   person entitled to the property of possession." *In re Marriage of Langham*, 153 Wn.2d

8   553, 564, 106 P.3d 212 (2005) (citation omitted). "The term 'chattel' encompasses 'both

9   tangible and intangible goods, such as corporate property.'" *Omega Morgan, Inc. v.*

10  *Heely*, No. C14-556RSL, 2015 U.S. Dist. LEXIS 56288, at *12-13 (W.D. Wash. Apr. 29,

11  2015) (quoting *Lang v. Hougan*, 136 Wn.App. 708, 718, 150 P.3d 622 (2007)). Plaintiffs

12  assert that they paid for the Vessel in full and received acknowledgement of the full

13  payment from Defendant. However, Brandt has refused to release the Vessel to Plaintiffs,

14  resulting in the conversion of their property. Dkt. # 123 at 17. Defendant moves for

15  dismissal of Plaintiffs' conversion claim, arguing that Plaintiffs have failed to provide

16  any evidence that Brandt was required to "report funds, to hold funds in escrow, to not

17  use funds for certain purposes, or to do anything other than the 'totality of the

18  business[.]'" Dkt. # 130 at 4.

19      Plaintiffs are entitled to summary judgment on their conversion claim. The record

20  before the Court establishes that Brandt continues to maintain possession of the Vessel,

21  Brand Dep. 408:11-12 ("The boat is sitting in a shop, I have possession of the boat."),

22  even though Plaintiffs have paid for the Vessel in full, Dkt. # 124 ¶ 29-30, Ex. L, and

23  Brandt confirmed to Plaintiffs in a June 6, 2022 statement that, "…the vessel is hereby

24  released to BUYER under contract terms." *Id.*, Ex. M. Further, Brandt's threats—

25  including some made during the pendency of this action— to sell the Vessel to a third

26  party, Dkt. # 8, Ex. J, keep the Vessel as collateral, *id.*, Ex. I, or to release the Vessel "as-

is" to Plaintiffs in exchange for $20,000, *id.*, Ex. J, underscore his continued interference with Plaintiffs' right to possession of the Vessel.

"Wrongful intent is not an element of conversion, and good faith is not a defense." *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 818, 239 P.3d 602 (2010). Thus, Brandt's assertions that he "made every expense[] believing it was the right thing for the business, the boat, and Mr. Davidow," and that things simply "did not go according to plan" are unpersuasive. *See Exxon Mobil Corp. v. Freeman Holdings of Washington, LLC,* 779 F. Supp. 2d 1171, 1181 (E.D. Wash. 2011). Plaintiff's request for summary judgment as to their conversion claim is **GRANTED** and Defendant's request to dismiss this claim is **DENIED**.

### 5.) Washington Consumer Protection Act

Plaintiffs seek summary judgment on their CPA claim. Dkt. # 123 at 17. The CPA provides that "any person who is injured in his or her business or property" by a violation of the Act may bring a civil suit to seek injunctive relief, damages, attorney fees and costs, and treble damages. RCW 19.86.090. To establish a CPA claim, Plaintiffs must show: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) an injury to business or property, and (5) that the injury was proximately caused by the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-792, 719 P.2d 531 (1986).

Brandt seeks summary judgment dismissal of Plaintiffs' CPA claim, arguing that they fail to establish that Brandt was a public risk of any kind. Dkt. # 130 at 4. Specifically, Brandt argues that Plaintiffs fail to provide any evidence that he violated any of the rules surrounding the sale of unregistered securities and he broke no laws in attempting to gain equity for Zalnatrav, and he is therefore entitled to dismissal as a matter of law. *Id.* at 5.

The Court finds that Plaintiffs establish all elements of a CPA violation. As to the

first prong, if a defendant's act or practice is not *per se* unfair or deceptive because it violates a statute declaring the conduct to be so, a plaintiff must make a showing under a "case-specific analysis of those terms." *Rush v. Blackburn*, 190 Wn.App. 945, 962, 361 P.3d 217 (2015) (citing *Hangman Ridge*, 105 Wn.2d at 786). "Because the act does not define 'unfair' or 'deceptive,' this court has allowed the definitions to evolve through 'a gradual process of judicial inclusion and exclusion.'" *Rush*, 190 Wn.App at 962 (quoting *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 344, 779 P.2d 249 (1989)). Drawing on federal caselaw interpreting the Federal Trade Commission Act, the Washington Supreme Court has held that "[d]eception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 50, 204 P.3d 885 (2009) (*en banc*) (quoting *Southwest Sunsites, Inc. v. F.T.C.*, 785 F.2d 1431, 1435 (9th Cir. 1986)). Plaintiffs need not show that Defendants' actions were *intended* to deceive, but that the acts had the *capacity* to deceive a substantial portion of the public. *Hangman Ridge*, 105 Wn.2d at 785. Whether a particular act is unfair or deceptive is a question of law. *Folweiler Chiropractic, PS v. American Family Ins. Co.*, 5 Wn.App.2d 829, 836, 429 P.3d 813 (2018) (citing *Panag*, 166 Wn.2d at 47). The second prong requires that the act or practice have occurred in the conduct of trade or commerce, which has been broadly defined to include "the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington." RCW 19.86.010(2).

Defendant Brandt's actions clearly involve the sale of assets or services in the state of Washington and were clearly deceptive. From his misrepresentations to Plaintiffs about the status of the Vessel, his failure to release the Vessel as required by the Contract, his attempts to obtain more cash from Plaintiffs in exchange for turning over the unfinished Vessel "as-is," and crucially, his August 2022 email communications in which he solicited funds from members of his list-serve to support Ravenark and the

construction of the Vessel, Dkt. # 124, Ex. P, Brandt engaged in several deceptive acts.

Indeed, Brandt made many expenditures towards public advertisements, *see* Dkt. # 142,

Ex. B, and testified that he actively sought new customers in target markets like San

Francisco via online ads. Brandt Dep. 326: 6-21. He attempted to infuse his business with

new cash under the guise of "investment" as he failed to use the money paid to him by

Plaintiffs to complete the Vessel.

The third prong, public interest impact, is demonstrated when a plaintiff shows

that "a defendant's practices affect the private plaintiff but that they also have the

potential to affect the public interest." *Indoor Billboard/Wash., Inc. v. Integra Telcom of

Wash., Inc.*, 162 Wn.2d 59, 73, 170 P.3d 10 (2007) (*en banc*) (citations omitted).

Ordinarily, a breach of contract matter where the breach affects no one but the parties to

the contract does not impact the public interest. *Hangman Ridge*, 105 Wn.2d at 790. But

"the likelihood that additional plaintiffs have been or will be injured in the exact same

fashion" changes what would normally be a private dispute into one affecting the public

interest. *Id.* In determining public interest impact, the Court may consider factors such as:

(1) whether the acts were committed in the course of defendant's business, (2) whether

the defendant advertised to the public, (3) whether the defendant actively solicited this

plaintiff, indicating potential solicitation of others, and (4) whether the plaintiff and

defendant occupied unequal bargaining positions. *Id.* No factor is dispositive and it is not

necessary that all are present. *Svendsen v. Stock*, 143 Wn.2d 546, 560, 23 P.3d 55 (2001)

(*en banc*).

Here, considering the factors listed above, the public interest prong has been

established. Defendant's acts occurred in the course of his boat-building business, and

involved his company Zalnatrav and his brand Ravenark. Defendant advertised to the

public, as evidenced by his deposition testimony and the spreadsheet detailing his

advertising expenses on behalf of Zalnatrav. Further, Defendant actively solicited

Plaintiffs' business, communicating with Davidow via email in December 2021 to discuss the purchase and manufacture of the Vessel. Dkt. # 124 ¶ 4, 5. In 2022, Defendant actively solicited other customers and investors for Zalnatrav in an attempt to fund his business, and apparently, his lifestyle. Moreover, Brandt's lack of expertise in boat manufacturing[1] and his prior failed ventures involving Steve Gavriloff and Jacobus Du Preez were not known to Plaintiffs at the time. Given this, it cannot be said that the parties occupied equal bargaining positions. Brandt's argument that no public interest impact exists because Plaintiffs have not submitted any evidence that Brandt negotiated any future deals with buyers is unpersuasive and severely undercut by Brandt's own statement to this Court that he entered into a contract in November 2022 to sell the Vessel to a third party in order to recoup his losses. Dkt. # 20 at 6.

The fourth and fifth elements of a CPA claim are established when a plaintiff proves that the defendant's unfair or deceptive act or practice deprived plaintiff of the use of property. *Dees v. Allstate Ins. Co.*, 933 F.Supp.2d 1299, 1310 (W.D. Wash. 2013). A "loss of use of property which is causally related to an unfair or deceptive act or practice" constitutes an injury under the CPA. *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990) (*en banc*). Here, there is no question that Defendant Brandt's actions have deprived Plaintiffs of the use of the Vessel that was promised to them, in addition to the $208,444 that they paid under the Contract. But for Brandt's various misrepresentations, discussed *supra* Section III(a)(3), Plaintiffs would not have paid the full Contract price for the Vessel via successive wire transfers, and indeed, likely even entered into the Contract in the first place. Because Plaintiff has established each element of a CPA violation, Plaintiffs' motion for summary judgment as to their CPA claim is

---

[1]When asked if he could name boat builders he had worked for in the past, Brandt stated that he sometimes did "little projects" or "acted as a contract." Brandt Dep.at 267:13-17. When asked for whom he had built boats for in any respect, Brandt responded that he doesn't "really build boats" and he is "not a fabricator per se." *Id.* at 267:18-21.

ORDER - 19

**GRANTED** and Defendant Brandt's request for summary judgment dismissal of this claim is **DENIED**.

### 6) Constructive Trust

Currently, Defendants are enjoined from transferring title, selling, encumbering, borrowing against or using as collateral, destroying, moving, or otherwise disposing of or transporting the Vessel, the engines associated with the Vessel, and any items purchased with funds paid by Plaintiffs to Defendants. Plaintiffs seek the imposition of a constructive trust over all items purchased by Brandt with the funds paid by Plaintiffs, including the Vessel and associated engines. Dkt. # 123 at 20.

"A constructive trust is an equitable remedy by which a court may restore property that another has gained through questionable means, such as fraud, misrepresentation, or overreaching." *Matter of Gilbert Miller Testamentary Credit Shelter Trust and Estate of Miller*, 13 Wn.App.2d 99, 106, 462 P.3d 878 (2020). Even in the absence of fraud, "courts may impose a constructive trust when retention of property would 'result in the unjust enrichment of the person retaining' the property." *Id.* (citing *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn.App. 80, 86-87, 18 P.3d 1144 (2001)). Because Brandt still maintains possession of the Vessel, the Court now finds it appropriate to impose a constructive trust upon the Vessel, the associated engines, and all other items purchased with funds paid by Plaintiffs to Defendants.

### b.) Defendant's Brandt's Counterclaims

Plaintiffs move for summary judgment as to Brandt's counterclaims of fraud, breach of contract, and malicious prosecution. Dkt. # 123 at 18; *see also* Dkt. # 17 (Brandt's Answer with Counterclaims). The Court will consider each claim in turn.

### 1) Fraud

ORDER - 20

1    The Court has previously set forth the elements of a claim of fraud. *See* discussion

2    *supra* III(a)(2). Here, Plaintiffs are entitled to summary judgment, as Defendant has

3    produced no evidence supporting a claim of fraud on the part of Plaintiffs. The Court

4    understands Brandt's fraud claim to rest on his assertion that Plaintiffs misrepresented

5    their ability to fully fund the manufacture of the Vessel and see the project through to

6    completion. Dkt. # 141 at 9. Brandt argues that Davidow's request to split the third

7    invoice payment is proof that he misrepresented their ability to pay for the Vessel. *Id.* at

8    14. However, this claim cannot stand when Plaintiffs paid the Contract price in full and

9    received Brandt's acknowledgement of the same. Additionally, Brandt and Davidow

10   mutually agreed to split the third invoice payment and Brandt ultimately accepted the

11   split payments (as well as all others). Dkt. # 142 ¶¶ 25, 26, Ex. J. All told, Brandt's fraud

12   claim is completely without support. Plaintiffs' request for summary judgment dismissal

13   as to Brandt's fraud claim is **GRANTED**.

14       *2) Breach of Contract*

15   Brandt asserts that Plaintiffs breached the Contract at several junctures: they failed

16   to notify Brandt that they were unhappy with Brandt's progress on the Vessel, split the

17   third invoice payment, failed to register the Vessel, failed to pay the invoice for bottom

18   paint, and did not make the Vessel a demo boat.[2] Dkt. # 142 (citing Brandt Dep. 401-

19   402). At the outset, any allegation that Plaintiffs failed to pay the Contract price for the

20   Vessel falls flat. Further, Brandt fails to explain how any the Contract imposed any of the

21   duties he asserts Plaintiffs breached and how he experienced an economic loss due to the

22   alleged breaches, as opposed to his own failed venture. *See* discussion *supra* Section

23   III(a)(3). Brandt's breach of contract claim fails. Plaintiffs' request for summary

24   judgment dismissal of this claim is **GRANTED**.

25
26   ───────────────
     [2] Brant also alleges that Plaintiffs breached the contract by failing to engage in arbitration. This issue was briefed by the parties and the enforceability of the arbitration clause was addressed by the Court in its February 17, 2023 order denying Brandt's request to compel the parties to arbitrate. Dkt. # 58.

1        *3)  Malicious Prosecution*

2            To establish a claim for malicious prosecution, Brandt must establish that: (1)

3    Plaintiffs instituted or maintained the alleged malicious prosecution, (2) lack of probable

4    cause to institute or continue the prosecution, (3) malice, (4) the proceedings ended on

5    the merits in favor of Brandt or were abandoned, and (5) Brandt suffered injury or

6    damage as a result. *Pay'n Save Corp. v. Eads*, 53 Wn.App. 443, 447, 767 P.2d 592

7    (1989). Brandt puts forth no evidence establishing any element of his claim. Therefore,

8    Plaintiffs' request for summary judgment dismissal of this claim is **GRANTED**.

9        **c.) Defendant's Outstanding Motions**

10           Several motions filed by Defendant Brandt remain outstanding, including: motion

11   to compel Plaintiffs' attendance at a settlement hearing (Dkt. # 131), motion objecting to

12   this Court's award of attorneys' fees (Dkt. # 147), and motion for 17% interest (Dkt. #

13   148). Plaintiffs oppose each motion. Dkt . ## 137, 149, 153. Because the parties'

14   summary judgment motions have addressed nearly all of the claims in this matter, the

15   Court declines to order the parties to attend a court supervised settlement conference. *See*

16   *Booren v. MB Law Group, LLP*, No. 3:20-cv-06163-RJB, 2020 WL 7767158, *1 (W.D.

17   Wash. Dec. 21, 2020) (participation in alternative dispute resolution is voluntary).

18   Brandt's request is **DENIED**.

19           Brandt's motion objecting to this Court's award of attorneys' fees and costs to

20   Plaintiffs must be **DENIED**. In his motion, Brandt opposes the award of attorneys' fees,

21   indicates that he is unable to pay these fees, and requests that the Court order Plaintiffs to

22   accept $312 as payment instead of the $3,712 ordered by this Court. Dkt. # 147. This fee

23   award was ordered after Brandt failed to appear and answer questions at his deposition,

24   and he gives the Court no reason to reconsider its prior Order. Brandt's motion is

25   **DENIED**.

26

Finally, Brandt requests an award of 17% interest on the purchase price of the Vessel pursuant to the parties' Contract. Dkt. # 148. According to Brandt, Plaintiffs failed to make several invoice payments, and Brandt is now entitled to a 17% penalty due to Plaintiffs' late payment. However, as discussed in this Order, the invoices that Brandt claims remain unpaid were bogus and created because Brandt needed an infusion of cash after depleting the funds provided by Plaintiffs. Similarly, this motion is **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment as to their fraud, breach of contract, conversion, and Washington Consumer Protection Act claims. Dkt. # 123. Defendant Brandt's Motion for Summary Judgment Dismissal of Plaintiffs' Claims is **DENIED**. Dkt. # 130. Defendant Brandt's remaining motions (Dkt. ## 131, 147, 148) are **DENIED**. If Plaintiffs dismiss their outstanding civil RICO claim in accordance with their representations at oral argument, judgment will be entered and this action will be terminated.

DATED this 24th day of January, 2024.

The Honorable Richard A. Jones
United States District Judge

ORDER - 23